[Cite as *Worch Lumber, Inc. v. Fetzer*, 2026-Ohio-2006.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| WORCH LUMBER, INC. | : | |
| | : | C.A. No. 2025-CA-23 |
| Appellees | : | |
| | : | Trial Court Case No. 25CV00003 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| CATHRYN M. FETZER, ET AL. | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 29, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

LEWIS, P.J., and EPLEY, J., concur.

THOMAS J. INTILI, Attorney for Appellant
CAMERON C. DOWNER, MICHAEL J. SCARPELLI, and CHRISTOPHER J. ELLINGTON, Attorneys for Appellees

HANSEMAN, J.

{¶ 1} Appellant Cathryn M. Fetzer appeals from a judgment of the Darke County Common Pleas Court denying her summary judgment and denying in part and granting in part summary judgment in favor of appellant Worch Lumber, Inc. ("Worch"). The partial grant of summary judgment to Worch extinguished the counterclaims that Fetzer had raised against it under the Home Construction Service Suppliers Act ("HCSSA"). In support of her appeal, Fetzer claims that the trial court's summary judgment decision was erroneous because it incorrectly determined that the HCSSA did not apply to her transaction with Worch. Fetzer also claims that she should have been granted summary judgment on all of her counterclaims. Because the applicability of the HCSSA was the sole issue certified for appeal, and because the trial court correctly determined that the HCSSA did not apply to the parties' transaction, the judgment of the trial court is affirmed.

**Facts and Course of Proceedings**

{¶ 2} On January 7, 2025, Worch commenced a civil action against Fetzer by filing a complaint that asserted claims for breach of contract, action on account, unjust enrichment, and foreclosure of a mechanic's lien that Worch had placed on Fetzer's residence. In the complaint, Worch alleged that Fetzer owed it $88,518.54 for improvements it had made to her residence. Worch attached three contracts to the complaint that described the alleged improvements and the associated cost of the improvements. Two of the three contracts were signed by Fetzer on July 25, 2023.

{¶ 3} On March 26, 2025, Fetzer filed an answer to Worch's complaint, as well as four counterclaims. Under her first counterclaim, Fetzer alleged that Worch had violated several provisions of the HCSSA and requested the statutory remedies provided thereunder. Under her second counterclaim, Fetzer alleged that Worch had engaged in breach of contract by failing to comply with the HCSSA and by failing to perform its work in accordance with applicable building codes and established industry standards. Under her third counterclaim, Fetzer alleged that under the HCSSA, she was entitled to a declaratory judgment confirming that no contract had been formed between her and Worch due to Worch's HCSSA violations. Lastly, under her fourth counterclaim, Fetzer alleged that Worch had engaged in slander of title by making false, disparaging statements about the title to her residence in the affidavit supporting its mechanic's lien.

{¶ 4} On October 2, 2025, Fetzer filed a motion for summary judgment that hinged on Worch's alleged violations of the HCSSA. In the motion, Fetzer argued that Worch's responses to her request for admissions established that it had violated several provisions of the HCSSA and, thus, proved her first three counterclaims. Fetzer also argued that her fourth counterclaim, slander of title, was proven because Worch had filed the affidavit for its mechanic's lien with knowledge of its HCSSA violations. Alternatively, Fetzer argued that even if Worch had been initially ignorant of its HCSSA violations, summary judgment would still be appropriate on that claim because Worch continued to persist in seeking foreclosure of the mechanic's lien even after receiving notice of the HCSSA violations in her counterclaim.

{¶ 5} Fetzer further argued that Worch's breach of contract and foreclosure claims failed as a matter of law due to its violations of the HCSSA. She also argued that Worch's unjust enrichment claim failed as a matter of law because unjust enrichment is an equitable

3

remedy that does not apply when its enforcement would "'defeat the public policy adopted by the legislature.'" Defendant's Motion for Summary Judgment (Oct. 2, 2025), p. 11, citing *Leatherbury v. Reagan*, 34 Ohio App. 3d 291, 293 (2d Dist. 1987). According to Fetzer, such a remedy would circumvent the express purpose of the HCSSA, which Fetzer argued is "'to make changes relative to residential construction and the [Consumer Sales Practices Act] and to establish laws governing the practices of home construction service suppliers.'" *Id*., citing *Orion Mgt., Inc. v. Kaeka,* 2025-Ohio-1047, ¶ 32 (9th Dist.).

**{¶ 6}** On October 23, 2025, Worch Lumber filed a memorandum opposing Fetzer's motion for summary judgment. In the opposing memorandum, Worch argued, among other things, that the trial court could not award Fetzer the relief she sought under the HCSSA because the HCSSA did not apply to the parties' transaction. Worch also filed a cross-motion for summary judgment in which it argued the inapplicability of the HCSSA. Worch additionally argued that Fetzer had failed to provide any admissible evidence of defective workmanship or actual damages. In light of its claims, Worch requested the trial court to grant summary judgment in its favor and to deny Fetzer summary judgment on all of her counterclaims.

**{¶ 7}** On November 17, 2025, the trial court issued a decision denying Fetzer's motion for summary judgment and denying in part and granting in part Worch's motion for summary judgment. The trial court granted Worch partial summary judgment because it found that the HCSSA did not apply to the parties' transaction. Accordingly, it granted the portion of Worch's motion that pertained to Fetzer's HCSSA-related claims. As to all other matters, the trial court found that there were genuine issues of material fact for which summary judgment was inappropriate.

4

**{¶ 8}** On November 21, 2025, Fetzer filed a motion for the trial court to certify its decision denying her motion for summary judgment as a final appealable order under Civ.R. 54(B). In support of the motion, Fetzer argued that there was no just reason to delay an appeal of the issue concerning whether the HCSSA applies to the parties' transaction. The trial court granted the motion and issued an order that certified its summary judgment decision as a final appealable order under R.C. 2505.02(B). Fetzer thereafter filed a notice of appeal from the trial court's decision.

**{¶ 9}** Worch filed a motion to dismiss Fetzer's appeal on grounds that this court lacked jurisdiction over the matter. Worch argued that the denial of a motion for summary judgment is not a final, appealable order for which this court has authority to review. It is well established that "the denial of a motion for summary judgment does not determine the action and prevent a judgment, and thus generally does not constitute a final order under R.C. 2505.02." *Celebrezze v. Netzley*, 51 Ohio St.3d 89, 90 (1990). However, because the trial court granted partial summary judgment in favor of Worch as to all of Fetzer's HCSSA-related counterclaims and completely disposed of those claims, we found that as to those claims, the trial court's summary judgment decision constituted a final, appealable order under R.C. 2505.02(B)(1). We also found that the trial court's summary judgment decision was a final, appealable order under R.C. 2505.02(B)(2) to the extent that Fetzer's HCSSA-related claims constituted a special statutory proceeding. Because the trial court disposed of Fetzer's HCSSA-related claims, we found that if she did not appeal, there would be no appropriate relief in the future. As a result, we found that the trial court's application of Civ.R. 54(B) and its finding of no just reason for delay of Fetzer's appeal were appropriate. Accordingly, we concluded that the judgment entry appealed from was a final, appealable order and overruled Worch's motion to dismiss Fetzer's appeal.

5

**{¶ 10}** After we overruled Worch's motion to dismiss the appeal, Fetzer filed an appellate brief raising a single assignment of error for review.

**Assignment of Error**

**{¶ 11}** Under her assignment of error, Fetzer argues that the trial court erred by denying her motion for summary judgment and asserts several underlying issues for this court to review. The scope of Fetzer's appeal, however, is limited to the portions of the trial court's summary judgment decision that are final and appealable. *See Dayton Children's Hosp. v. Garrett Day LLC*, 2018-Ohio-5466, ¶ 20 (2d Dist.). Here, the only portion of the trial court's summary judgment decision that is final and appealable is the trial court's determination that the HCSSA does not apply to the parties' transaction, as that was the outcome-determinative issue that disposed of several of Fetzer's counterclaims. Therefore, our appellate review is limited to that narrow issue.

*Standard of Review*

**{¶ 12}** "For summary judgment to be granted under Civ.R. 56(C), 'it must be demonstrated that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party.'" *Capital One, N.A. v. Campbell*, 2026-Ohio-1, ¶ 23 (2d Dist.), quoting *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 617 (1998), citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1997). "The party seeking summary judgment has the burden of showing that no genuine issues of material fact exist." *Id.*, citing *Miller* at 617, citing *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988). "'[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if

6

appropriate, shall be entered against the nonmoving party.'" *Id.*, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party." *Oasis Home Buyers LLC v. Estate of Thomas*, 2026-Ohio-487, ¶ 7 (2d Dist.), citing *Norris v. Ohio Std. Oil Co.*, 70 Ohio St.2d 1, 2 (1982).

{¶ 13} "Appellate courts use the de novo standard when reviewing summary judgment decisions." *Id*. at ¶ 8, citing *GNFH, Inc. v. W. Am. Ins. Co.*, 2007-Ohio-2722, ¶ 16 (2d Dist.). "In this type of review, we use the same standards as the trial court and examine the evidence to decide if genuine issues of material fact preclude summary judgment." *Campbell* at ¶ 24, citing *Ward v. Bond*, 2015-Ohio-4297, ¶ 8 (2d Dist.).

*The HCSSA*

{¶ 14} "[T]he legislature enacted the [HCSSA] in 2012 'to make changes relative to residential construction and the [Consumer Sales Practices Act ("CSPA")] and to establish laws governing the practices of home construction service suppliers.'" *Orion Mgt., Inc. v. Kaeka*, 2025-Ohio-1047 ¶ 16 (9th Dist.), quoting Am.Sub.H.B. No. 383, 2012 Ohio Laws File 107. "The CSPA applies to consumer transactions and prohibits unfair, deceptive, or unconscionable acts or practices by suppliers in consumer transactions whether they occur before, during, or after the transaction." *Estate of Tomlinson v. Mega Pool Warehouse, Inc.*, 2023-Ohio-229, ¶ 17 (5th Dist.), citing R.C. 1345.02(A), *rev'd on other grounds*, 2024-Ohio-1065. In contrast, the HCSSA applies to "home construction service contracts," which are contracts "between an owner and a supplier to perform home construction services, including services rendered based on a cost-plus contract, for an amount exceeding twenty-five thousand dollars." R.C. 4722.01(C). The HCSSA establishes requirements for such contracts, prohibits certain unfair practices, limits down payments, and provides remedies

7

for violations of the act. *See* R.C. 4722.02 through 4722.08. When the HCSSA was enacted, the legislature amended the CSPA to exclude "transactions involving a home construction service contract as defined in [R.C. 4722.01]." R.C. 1345.01(A). "As a result, transactions that may have met the definition of 'consumer transaction' were now exempted from the CSPA if they involved transactions involving a 'home construction service contract.'" *A1 Heating and Cooling, Inc. v. Thomas*, 2024-Ohio-109, ¶ 55 (5th Dist.).

{¶ 15} As of September 20, 2024, the definition of "home construction service" has been "the construction of a residential building, including the creation of a new structure and the repair, improvement, remodel, or renovation of an existing structure." R.C. 4722.01(B). However, when the HCSSA was originally enacted in 2012, the definition of "home construction service" was simply "the construction of a residential building." Former R.C. 4722.01(B). The term "construction" is not defined by the HCSSA.

{¶ 16} Given the original definition of "home construction service," Ohio's Fifth and Eleventh Appellate Districts have held that the HCSSA, as originally enacted, applied only to contracts for new home construction—not to repairs, remodels, or renovations. *E.g.*, *Beder v. Cerha Kitchen and Bath Design Studio, LLC*, 2022-Ohio-4463, ¶ 7-18 (11th Dist.) (holding that the CSPA—not the HSCCA—applied to a home remodeling contract that involved work on an already existing home because the term "home construction service" under the HCSSA does not encompass remodeling); *Tomlinson* at ¶ 17-27 (applying the analysis in *Beder* and holding that a contract for the installation of a new swimming pool and improvements to an existing concrete deck on a home was governed by the CSPA and not the HCSSA, because the HCSSA applies to new home construction); *A1 Heating and Cooling* at ¶ 55-61 (agreeing with the application of the HCSSA in *Beder* and *Tomlinson* and finding that the HCSSA applied to a contract for providing a heating unit and plumbing in a

8

newly constructed home). In interpreting the scope of the HCSSA as enacted, the Fifth and Eleventh Districts relied on the Supreme Court of Ohio's definition of "construction" in *State ex rel. Celebrezze v. Natl. Lime & Stone Co.*, 68 Ohio St.3d 377 (1994).

{¶ 17} In *Celebrezze*, the Supreme Court construed an Ohio Administrative Code provision regulating the "'installation' of an air contaminant source." *Id*. at 380. The administrative rule defined the term "install" as "to construct, erect, locate or affix any air contaminant source." *Id*., quoting Adm.Code § 3745-31-01(I). Because the administrative rules did not define the word "construct," the Supreme Court looked to the sixth edition of *Black's Law Dictionary* and stated the following:

> According to Black's Law Dictionary (6 Ed.1990) 542, "erect" and "construct" are synonymous terms. "Construct" is defined as "[t]o build; put together; make ready for use . . . [and] is distinguishable from 'maintain,' which means to keep up, to keep from change, to preserve." *Id*., Black's at 312. Further, "construction" is defined as " . . . [t]he *creation of something new*, as distinguished from the repair or improvement of something already existing. . . ." (Emphasis added.) *Id*.

(Bracketed text in original.) *Celebrezze* at 382.

{¶ 18} In light of the definition of "construct," the Supreme Court in *Celebrezze* observed that "'[t]he uniform conclusion is that "construction" imports the creation of something new and original that did not exist before,'" and found that that the term "installation" referred to a new source of air contaminants and not the modification of an existing source. *Id.* at 382, quoting *United States v. Narragansett Improvement Co.*, 571 F.Supp. 688, 693 (D.R.I. 1983).

9

{¶ 19} Because *Celebrezze* was issued well before the 2012 enactment of the HCSSA, the Eleventh District in *Beder* found that the "'Legislature is presumed to know the decisions of [the Supreme Court of Ohio], and, where it uses words or phrases that have been defined or construed by th[e] court, it is presumed have used them in the sense that they have been so defined or construed.'" (Bracketed text in original.) *Beder*, 2022-Ohio-4463, at ¶ 14 (11th Dist.), quoting *Tax Comm. of Ohio v. Sec. Sav. Bank & Trust Co. of Toledo*, 117 Ohio St. 443, 450 (1927). Accordingly, the *Beder* court "presume[d] that the legislature intended the term 'construction' to have the meaning set forth in *Celebrezze*," which again was the creation of something new, as opposed to the repair or improvement of something already existing. *Id*. The courts in *Tomlinson* and *A1 Heating and Cooling* agreed with that reasoning and followed suit.

{¶ 20} In contrast, Ohio's Ninth Appellate District declined to adopt the definition of "construction" in *Celebrezze*. The court concluded in *Orion*, 2025-Ohio-1047 (9th Dist.), that the Supreme Court of Ohio did not intend "to supply a singular definition to the term 'construction' for all future cases, regardless of circumstance." *Id*. at ¶ 29. *Orion* rejected the definition used by *Celebrezze* as "obsolete" and held that the contemporaneous meaning of "construction" was one that encompassed both new construction and remodeling. *Id*. at ¶ 29-32. The *Orion* Court explained:

> A broader interpretation of "construction" serves the legislature's stated purpose in enacting the [HCSSA], which was "to make changes relative to residential construction and the [CSPA] and to establish laws governing the practices of home construction service suppliers." Am.Sub.H.B. 383, 2012 Ohio Laws File 107. This Court also would note that the legislature recently amended R.C. 4722.01. That amendment went into effect in September 2024.

It revised the definition of "[h]ome construction service." The current version of the statute now defines the phrase as "the construction of a residential building, including the creation of a new structure and the repair, improvement, remodel, or renovation of an existing structure." R.C. 4722.01(B). While inapplicable to the contract at issue, the amendment eliminates any doubt as to whether the legislature intended the [HCSSA] to apply only to new construction.

*Id*. at ¶ 32.

{¶ 21} Based on the foregoing analysis, the *Orion* court concluded that it was appropriate to apply the HCSSA (as opposed to the CSPA) to a contract to rebuild a damaged home—not an entirely new home—despite the contract predating the amended definition of "home construction service" in R.C. 4722.01(B). *Id*. at ¶ 33.

{¶ 22} The United States District Court for the Northern District of Ohio recently analyzed the application of the HCSSA in *Lambright v. New Age Dome Construction, LLC*, 2026 WL 681726 (N.D.Ohio Mar. 11, 2026). The court disagreed with the conclusion reached in *Orion* and instead found the Eleventh District's reasoning in *Beder* persuasive. The court stated:

> The *Orion* court disagreed with the *Beder* court's conclusion, contending the Supreme Court of Ohio's "decision to apply the more limited definition of 'construction' stemmed from (1) its interpretation of other words used in the administrative code section at issue, (2) the reasonableness of that interpretation, and (3) the 'considerable deference' it had to afford the Ohio Environmental Protection Agency's interpretation of its own rules." *Orion*, 269 N.E.3d at 493 (quoting *State ex rel. Celebrezze*, 627 N.E.2d at 542). . . .

11

. . .

. . . [T]he *Orion* court's description of the Supreme Court of Ohio's path to adopting its definition of "construction" is inaccurate. The Supreme Court of Ohio's application of its adopted definition did not "stem[ ] from" the matters the *Orion* court highlighted. *Id*. Rather, the Supreme Court of Ohio first adopted its definition of "construction" and proceeded forward from there.

. . .

. . . [T]he *Orion* court incorrectly implies that the principle of deference led to the Supreme Court of Ohio's adoption of the definition of "construction" it chose. To the contrary – the Supreme Court of Ohio held that the agency's attempt to interpret "installation" as including remodeling or replacement was "*unreasonable*." *State ex rel. Celebrezze*, 627 N.E.2d at 542 (emphasis added). Stated otherwise, the Supreme Court of Ohio adopted its definition of "construction" even after offering substantial deference to the agency's more expansive definition.

*Lambright* at *2-3.

{¶ 23} The court in *Lambright* also disagreed with the *Orion* Court's finding that the September 20, 2024 amendment that changed the definition of "home construction service" to include "the creation of a new structure and the repair, improvement, remodel, or renovation of an existing structure" eliminated any doubt as to whether the legislature had intended the HCSSA to apply only to new construction. The court instead agreed with the dissenting judge in *Orion*, who explained that

"to clearly include remodeling within the definition of home construction service was made in order to alter the existing law, not to more clearly set forth the

12

legislature's original intent; this is so, because prior to the change, all appellate courts which had addressed the issue had concluded that home construction service did not include remodeling. Thus, prior to the change, the existing law was that home construction service did not include remodeling and thus remodels fell within the CSPA."

*Lambright*, 2026 WL 681726, at *3 (N.D. Ohio Mar. 11, 2026), quoting *Orion,* 2025-Ohio-1047, at ¶ 96 (9th Dist.), (Carr, J., concurring in part and dissenting in part).

**{¶ 24}** Based on its analysis of the statute, the court concluded "that if the Supreme Court of Ohio had considered this issue in a case predating the 2024 amendment to the HCSSA, that court would have adopted the interpretation of the term "construction" applied by the Fifth and Eleventh District Courts of Appeal in *Beder*, *Tomlinson*, and *A1 Heating and Cooling*." *Id*.

*Analysis*

**{¶ 25}** We agree with *Lambright* and find the analysis in *Beder* and its progeny to be persuasive. In Am.Sub.H.B. No. 50, 2024 Ohio Laws 30, the legislature specifically stated that in amending R.C. 4722.01, its intention was "to extend the [HCSSA] to repairs, improvements, remodels, or renovations of existing structures," which supports the conclusion that the HCSSA did not originally cover those actions.

**{¶ 26}** We disagree with *Orion* for the reasons discussed in *Lambright*. Moreover, we disagree with *Orion* because the court applied the amended definition of the term "home construction service" retroactively. It is well established that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48; *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 105 (1988). "A law may be applied retroactively if (1) there is an express legislative intent that it do so and (2) it affects a remedial, not

substantive, right." *State ex rel. Romans v. Elder Beerman Stores Corp.*, 2003-Ohio-5363, ¶ 11, citing *Van Fossen.* "If no [express legislative] intent is found, the analysis stops there, and the statute is deemed to be prospective only." *State ex rel. Kilbane v. Indus. Comm.*, 91 Ohio St.3d 258, 259 (2001). The amended September 20, 2024 version of the HCSSA contains no express language of retroactivity. Therefore, the amended version of the HCSSA applies only to home construction service contracts that were entered on or after September 20, 2024.

{¶ 27} In this case, there is no dispute that Fetzer engaged Worch to perform over $25,000 worth of home improvements in 2023. As previously discussed, the HCSSA applies to "home construction service contracts," which are contracts "between an owner and a supplier to perform *home construction services*, including services rendered based on a cost-plus contract, for an amount exceeding twenty-five thousand dollars." (Emphasis added.) R.C. 4722.01(C). Because the transaction at issue took place prior to September 20, 2024, the original definition of "home construction service" applies.

{¶ 28} As found in *Beder*, *Tomlinson*, *A1 Heating and Cooling*, and *Lambright*, the original definition of "home construction service" does not include home repairs, remodels, or renovations. Because the contracted work in this case did not call for the construction of a new home, but rather improvements and renovations to an existing home, Fetzer did not enter into a home construction service contract as defined by the HCSSA. Therefore, the HCSSA does not apply to this case. As a matter of law, Fetzer cannot prevail on any of her HCSSA-related counterclaims. Accordingly, it was appropriate for the trial court to grant partial summary judgment in favor of Worch as to the HCSSA-related counterclaims.

{¶ 29} Fetzer's sole assignment of error is overruled.

14

## Conclusion

{¶ 30} Having overruled Fetzer's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and EPLEY, J., concur.